UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| DARRELL GLENN LIVINGSTON | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 3:11-cv-423 |
| | § | |
| RICK THALER, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

Petitioner Darrell Glenn Livingston (TDCJ #1416074) brings this application for habeas corpus relief under 28 U.S.C. § 2254, challenging his conviction for sexual assault of a child. Respondent moves to dismiss Petitioner's application. Having considered the pleadings, the record, and the applicable law, this Court dismisses Livingston's petition.

### I. PROCEDURAL HISTORY

In October 2006, a Brazoria County jury found Livingston guilty of sexual assault of a child and sentenced him to fifty years' imprisonment and a $10,000 fine. Livingston appealed his conviction, but the Fourteenth Court of Appeals of Texas affirmed the judgment. The Texas Court of Criminal Appeals refused Livingston's petition for discretionary review.

Livingston subsequently filed a state habeas application, which was denied without written order on September 7, 2011. Livingston then filed

this federal petition, arguing that he is entitled to relief because: (1) he was denied the right to represent himself at trial; and (2) he received ineffective assistance of counsel.

## II.     FACTUAL BACKGROUND

The following statement of facts is taken from the Fourteenth Court of Appeals' opinion affirming Howard's conviction:

> M.M., the complainant and appellant's sixteen year old niece, testified that during the summer of 2004 she began experimenting with marihuana, cocaine, and pills. Appellant would supply her with pills and crack cocaine in exchange for M.M. showing her breasts to him. One evening, appellant took M.M. to get her nails done at a nail salon in Pearland, Texas. M.M. testified that afterward appellant refused to drive her home unless she "stuck [her] mouth on his penis." After initially arguing with appellant, M.M. complied. M.M. testified that when she "didn't want to ... finish" with her mouth, appellant told her to put her bare feet "on his penis and finish him off that way," which she did. This occurred around 9:00 p.m. in the parking lot when most of the nearby stores were closed. According to M.M., at some point drugs were exchanged for the act.
>
> M.M. testified that some time later she went with appellant to obtain pills, but she did not remember where they went that weekend because she was high. It is not entirely clear from the trial testimony whether M.M. went with appellant voluntarily or under coercion, but apparently M.M. left with appellant for the entire weekend. As a result, someone placed a phone call to the Pearland police reporting that M.M. was gone and describing appellant's truck. Based on this call, Pearland Police Officer Jose Guzman identified appellant's truck and pulled him over. After changing his story a couple of times, appellant gave Officer Guzman an address where he could find M.M. M.M. initially hid from the police when they arrived at this address, but she eventually allowed them to take her back to the police station. At this point, M.M. told Pearland Police Officer Cecil Arnold that appellant had forced her to perform oral sex.

> Appellant was charged with intentionally or knowingly penetrating the mouth of a child under the age of seventeen and not his spouse with his sexual organ. The jury returned a guilty verdict. At punishment, appellant pleaded true to the enhancement paragraph in the indictment alleging a 1969 conviction of felony theft. Appellant also stipulated to five additional prior convictions for various offenses. The jury assessed punishment at fifty years in prison and a $10,000 fine. Appellant filed a motion for new trial and an amended motion for new trial, but the record does not indicate that these motions were presented to the judge or that a hearing was conducted.

*Livingston v. State*, 14-06-01031-CR, 2008 WL 2262033 at *1 (Tex. App. May 29, 2008).

### III.   STANDARD OF REVIEW

The Court reviews Livingston's petition under the federal habeas statutes as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254.  When a state court has adjudicated a claim on the merits, federal habeas relief cannot be granted under the AEDPA unless the state court decision (1) was contrary to clearly established federal law as determined by the United States Supreme Court; (2) involved an unreasonable application of clearly established federal law; or (3) was based on an unreasonable factual determination in light of the evidence presented.  *Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770, 784 (2011) (quoting 28 U.S.C. § 2254(d)).  A summary denial of claims by the state habeas court is still considered an adjudication on the merits. *See id.* at

784–85.

State court determinations on questions of law and mixed questions of law and fact receive deference unless they are contrary to, or are unreasonable applications of, clearly established federal law.  28 U.S.C. § 2254(d)(1).  A state court decision is "contrary to" precedent if it "applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court] . . . on a set of materially indistinguishable facts."  *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citation omitted).  A state court decision involves an unreasonable application of federal law "if the state court correctly identifie[d] the governing legal principle . . . but unreasonably applie[d] it to the facts of the particular case."  *Id.* (citation omitted).

State court determinations on pure questions of fact receive deference unless based on an unreasonable factual determination in light of the evidence presented.  28 U.S.C. § 2254(d)(2).  A federal court must presume that the state court's underlying factual determinations are correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 573 U.S. 322, 330–31 (2003).  This deference extends to both express and implicit findings of fact.  *Garcia v. Quarterman*, 454 F.3d 441, 444–45 (5th Cir. 2006) (citations omitted).

The presumption of correctness is especially strong when the trial court and habeas court are the same. *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000) (citations omitted).

IV. ANALYSIS

    a. **The Pro Se Challenge**

The Sixth Amendment to the United States Constitution implicitly grants the right of criminal defendants to "waive the assistance of counsel and represent [themselves] at trial". *Page v. Quarterman*, CIV.A. H-06-625, 2007 WL 998473 at *16 (S.D. Tex. Mar. 30, 2007) (citing *Faretta v. California*, 422 U.S. 806, 819 (1975)) (citation omitted). The right to self-representation must be asserted in order to be effective. The defendant must "knowingly and intelligently" waive his right to counsel, and the request for self-representation must be "clear and unequivocal." *Page*, 2007 WL 998473, at *16 (citing *Faretta*, 422 U.S. at 835) (citation omitted). "Where a fundamental constitutional right, such as the right to counsel, is concerned, courts indulge every reasonable presumption against waiver." *Burton v. Collins*, 937 F.2d 131, 133 (5th Cir. 1991) (citing *Johnson v. Zerbst,* 304 U.S. 458, 464 (1937)) (citation omitted). The Fifth Circuit "has strictly construed the clear and unequivocal requirement of *Faretta*." *Burton*, 937 F.2d at 133 (citations and internal punctuation omitted).

Livingston's burden is to demonstrate that the Fourteenth Court of Appeals of Texas unreasonably applied federal law when it concluded that his right to represent himself was not violated. Livingston argues that his Motion to Dismiss Court Appointed Counsel and the numerous other motions he filed constitute irrefutable evidence that he clearly and unequivocally desired to proceed pro se. In his Motion to Dismiss Court Appointed Counsel, however, Livingston listed the names of several other attorneys whom he desired to replace Counsel as his counsel. Replacing one attorney with another is not a clear and unequivocal request to proceed pro se, and only serves to suggest that he desired different counsel, rather than no counsel at all. *See United States v. Gutura*, 430 F.App'x 314, 317 (5th Cir. 2011). At most, Livingston vacillated between desiring representation and proceeding pro se, and thus his requests were merely equivocal. *Randolph v. Cain*, 412 F. App'x 654, 658 (5th Cir. 2010) (citations omitted). Moreover, Mr. Livingston's lack of objection to Counsel representing him at trial functions as a waiver of the right to self representation; he had the opportunity and ability to refuse to proceed until afforded pro se status, and yet he let the trial commence. *See Funderburg v. State*, 717 S.W.2d 637, 642 (Tex. Crim. App. 1986). The Fourteenth Court of Appeals of Texas's decision that he either did not assert his right to self-representation or that if

he did, he waived it by proceeding to trial, is not based on an unreasonable application of federal law nor an unreasonable factual determination in light of the evidence presented. Petitioner is not entitled relief on this claim.

### b. The Ineffective Assistance of Counsel Claim

An ineffective assistance of counsel claim previously rejected by a state court is evaluated under a "doubly deferential" standard. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). The first level of deference comes from *Strickland* itself, which requires that a petitioner demonstrate that (1) his attorney's representation was so deficient that the attorney was not functioning as the counsel that the Sixth Amendment guarantees and (2) the defense was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first prong of this test is measured under "an objective standard of reasonableness." *Id.* at 688. A court's review of the trial attorney's performance must be "highly deferential." *Id.* at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Under the second prong, the defendant has the burden to

"affirmatively prove prejudice." *Id.* at 693. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Id.*

The second level of deference is that afforded under the AEDPA, requiring this Court to afford deference to the state court's determination of Livingston's ineffective assistance claim unless it was contrary to, or an unreasonable application of, the *Strickland* standard. *See* 28 U.S.C. § 2254(d)(1).

Appellant claims that counsel (1) failed to prepare for trial effectively, and (2) failed to call character witnesses during the punishment phase of trial. Docket Entry No. 1 at 20-25. This court agrees with the Fourteenth Court of Appeals of Texas that the "[a]ppellant makes conclusory assertions that the conduct was deficient, but he fails to provide any argument or authority supporting these allegations." *Livingston*, 2008 WL 2262033 at *8. Livingston claims that trial counsel's minimal jail visitation time is de facto proof that her conduct did not reach the constitutionally guaranteed protections offered by the Sixth Amendment. As an initial matter, even if

this were the case, he does not demonstrate that his defense was prejudiced because of that lack of visitation time.

But there is also insufficient evidence of deficient performance. To support his claim of ineffective preparation, Livingston contends that there is a discrepancy between the pretrial work counsel claims she performed and her "pared down" file. However, it is not unreasonable for the state court to make a credibility determination in favor of counsel. *Chester* v. *Thaler*, 666 F.3d at 340, 2011 WL 6846746 at *8–9 (5th Cir. 2011). There is no evidence or authority supporting Livingston's allegation of ineffective assistance of counsel beyond that discrepancy; thus, on both deficiency and prejudice grounds, the Fourteenth Court of Appeals of Texas reasonably applied federal law in rejecting this claim.

Appellant's second claim fails for similar reasons. Livingston alleges that trial counsel did not call any witnesses to testify during the punishment phase. Docket Entry No. 1 at 24–25. The Texas Court of Criminal Appeals found, however, that counsel attempted to obtain the names of punishment phase witnesses from Livingston, but he failed to provide them. SHCR at "Action Taken" page, 120–121. Livingston communicated with the individuals he claims would have testified on his behalf, yet he failed or refused to provide their names to counsel. *Id*. Livingston has failed to

demonstrate that the findings of the Fourteenth Court of Appeals of Texas were based on unreasonable factual determinations. Even if Livingston had demonstrated that the lack of witnesses was the fault of counsel, he has provided no evidence that his defense was ultimately prejudiced as a result. The state court's determination that Livingston is not entitled to relief on this ground is neither contrary to, nor an unreasonable application of, federal law. *See* 28 U.S.C. § 2254(d)(1).

## V. CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by AEDPA, codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals ... ' "*Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

Under AEDPA, a petitioner must obtain a certificate of appealability before he can appeal the district court's decision. 28 U.S.C. § 2253(c)(1). This court will grant a COA only if the petitioner makes a "substantial

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to make a substantial showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As the Supreme Court made clear in its decision in *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003), a COA is "a jurisdictional prerequisite," and "until a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from the habeas petitioners." When considering a request for a COA, "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Id.* at 325.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). After considering all of the pleadings, the state court records, and the applicable law, the Court concludes that none of the issues presented in this case warrant a certificate of appealability under the applicable standard. Therefore, a certificate of appealability will not issue.

## VI. CONCLUSION

Based on the foregoing, the respondent's motion to dismiss is **GRANTED**, the petition for writ of habeas corpus is **DENIED**, and a certificate of appealability is **DENIED**. All pending motions, if any are **DENIED**.

It is so **ORDERED.**

Signed on July 2, 2013

_____
Gregg Costa
United States District Judge